**UNITED STATES of America,**
**Appellee,**

v.

**Russell Eugene BRIDDLE, Appellant.**
**No. 20169.**

United States Court of Appeals,
Eighth Circuit.

Nov. 10, 1970.

Certiorari Denied Feb. 22, 1971.
See 91 S.Ct. 910.

Murry L. Randall, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON and LAY, Circuit Judges, and HUNTER, District Judge.

ELMO B. HUNTER, District Judge.

Russell Eugene Briddle, as the result of a jury-waived trial, was convicted of possessing a sawed-off shotgun which had not been registered with the Secretary of the Treasury or his delegate in the National Firearms Registration and Transfer Record as required by Section 5841, Title 26, United States Code. Briddle was sentenced to imprisonment for two years to run consecutive to a five year sentence imposed in another case.

On this appeal the only issue raised is Briddle's contention the trial court erred in failing to suppress and subsequently over his objection receiving into evidence at the trial the sawed-off shotgun.[1] Briddle asserts (1) the search warrant obtained and used by the federal officers was invalid because the affidavit on which it was based did not contain facts establishing probable cause for its issuance, and (2) the search and seizures, especially of the shotgun, were illegal, unreasonable and in violation of his fourth amendment rights, even if the search's inception may have been reasonable as an incident of his arrest, because of the intolerable intensity and scope of the search and seizures made by the officers.

The affidavit on which the search warrant was issued appears to be insufficient under the teachings of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; and others, and the Government makes no present effort to assert its validity. Instead, it is the Government's position the shotgun was in plain view of the special agent of the F.B.I. during the course of a cursory visual inspection of the premises where Briddle was arrested, to determine if other persons were present who might thwart the arrest or present a threat to the officers present or escape the premises, and therefore the trial court properly denied the Motion to Suppress and did not err in admitting the gun in evidence at the trial.

A statement of the relatively undisputed evidence adduced at the hearing on the Motion to Suppress is essential to a proper resolution of the issue presented on this appeal.

On July 11, 1968, a 1967 Cadillac containing numerous valuable items of personal property was stolen from Jerome Friedman in Bayside, New York.[2] At the time of the theft of the automobile Briddle was incarcerated in the State Prison in Jefferson City, Missouri, where he remained until October, 1968. On June 27, 1969, using a fictitious name and a false address Briddle traded in the stolen automobile at Ken Bender's Motor Company in St. Charles, Missouri.

---

1. In a well-reasoned unpublished opinion the trial court after an evidentiary hearing found against Briddle on his Motion to Suppress in which Briddle presented substantially the same contentions that he makes on this appeal.

2. A Sony Television set, a Polaroid camera and case, a Kodak Instamatic camera, a remote control door unit, a tote bag, an attache case containing legal papers and a quantity of women's clothing.

About July 1, 1969, Special Agent Hess of the F.B.I. and officers of the Missouri State Highway Patrol examined the car and determined it was a stolen car. About August 20, 1969, Hess learned the car when stolen contained the mentioned valuable items of personal property. Hess also learned Briddle was the person who had traded in the stolen car.

On October 16, 1969, a search warrant was issued to search Briddle's apartment for the named items that had been in the car at the time it was stolen in July, 1968.[3] On October 21, 1969, four F.B.I. agents and a St. Louis City police officer possessed with the search warrant and a warrant for the arrest of Briddle for Dyer Act Violation arrived at his small four room apartment in St. Louis City. After knocking several times and vocally identifying themselves, with no response, the officers went to the office of the apartment building in which Briddle's apartment was located to get the manager. They returned with the manager to Briddle's apartment and again knocked on the door. · No response was received, and the manager with ·a master key opened the door which led into the living room.

The officers immediately entered the apartment and Briddle was observed standing in the hallway of the apartment, beyond the small living room and near the doors of the two bedrooms. Special Agent Hess arrested Briddle, and officers Hancock and Peat "fanned out" to make a quick search of the apartment premises to determine whether other persons were present who might prevent Briddle's arrest or detention or present a danger to the officers present in the apartment. Hancock entered the northwest bedroom which was approximately twelve or fifteen feet from the living room,[4] and saw the sawed-off shotgun in the southeast corner of the bedroom in the open on the floor about four feet from the bed. He had been in the apartment about one minute when he entered the bedroom and saw the shotgun which was clearly visible to him when he entered the bedroom, as were many other items including some handguns. When the officers first entered the apartment Briddle was closer to the handguns than he was to the officers.[5] No other persons were found in the apartment.

Upon his arrest Briddle was handcuffed and then was taken into the kitchen where he remained while the officers for approximately three hours conducted an intensive general search of the apartment.[6] Many items, some in plain view, others concealed in drawers and other places were discovered in the search and were seized but none of them were used at the trial.[7] At an undisclosed time the shotgun which had been carried into the living room by Hancock was eventually placed on the bed in the northeast bedroom along with other items seized, and an inventory was made of all these items.[8]

As earlier indicated, Briddle and the Government agree that the only issue raised on this appeal is the validity of the described October 21, 1969 search and seizure event particularly as it af-

---

3. It was stipulated at the hearing on the Motion to Suppress that none of the items set forth in the search warrant and which were in the Cadillac when it was stolen were ever seen in the possession of Briddle.

4. The two bedrooms were located opposite each other on each side of the hallway.

5. The handguns were approximately 12 feet from Briddle.

6. From 9:40 a. m. to 12:50 p. m. None of the items described in the search warrant were found.

7. These seized items included many automatic handguns and ammunition; acetylene torch igniters and four cutting torches; three blank Missouri chauffeurs licenses; one cigar box containing 18 bottles marked tincture of opium, cocaine hydrochloric merc, and others; 8 pairs brown cloth gloves, and many other items.

8. Under the exclusionary rule objections to items seized in a search may be made only if the items are offered into evidence at the trial. See, United States v. Bridges, 419 F.2d 963 (8th Cir. 1969).

fected the obtaining of and the introduction in evidence of the sawed-off shotgun. Briddle asserts the search and seizure that occurred in his apartment on that date violated his fourth amendment right of protection against unreasonable searches and seizures and resulted in the shotgun falling within the exclusionary rules for items obtained as a result of an unreasonable search and seizure. He further contends the shotgun was seized as an inseparable part of an illegal search conducted under an invalid search warrant; that the obtaining of the search warrant was a mere pretext to get into his apartment to conduct a general search; and that the overbreadth of the search conducted tainted all items seized, including the shotgun.

The trial court ruled the shotgun was validly seized as an incident to Briddle's arrest. Briddle does not question the right of the officers to make his arrest and in connection with it to conduct a cursory search of the apartment for other persons as a security measure.[9] He urges that the broad unwarranted and illegal search that followed tainted all evidence discovered at any time the officers were in his apartment on the occasion of his arrest.

For the purpose of this opinion we accept Briddle's contention that the search warrant was invalid because it was not supported by a sufficient affidavit showing probable cause for its issuance.[10] We need not, for reasons we will later discuss, determine whether in every instance a search which is reasonable in its inception may violate fourth amendment rights by virtue of its intensity and scope so as to taint all items obtained at any time during the search. The distinguishing and controlling fact, as we view the case before us, is that the shotgun was not discovered as the result of any search whatsoever. Rather, it was discovered by being in plain view in the bedroom which Special Agent Hancock entered in the exercise of his conceded right to conduct a quick and cursory viewing of the apartment area for the presence of other persons who might present a security risk. As stated in Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed. 2d 1067, "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Thus, when Special Agent Hancock observed in plain view an illegally possessed sawed-off shotgun (contraband) he had the right to seize it, and in so doing he did not violate any fourth amendment right of Briddle. See, United States v. Baca, 417 F.2d 103 (10th Cir. 1969); Harris v. United States, supra.

The policy reasons that support the application of an exclusionary rule as to evidence obtained in violation of fourth amendment rights by an illegal search and seizure are not present where the evidence is obtained without any search by being observed in plain view by an officer who concededly had a right to be where the observation occurred. Nor do we deem it to be necessary, advisable or in the public interest to declare that an unreasonable search occurring thereafter either under an invalid search warrant or by way of overbreadth and incidental to a lawful arrest taints and brings under the exclusionary rule contraband type evidence discovered and seized under the circumstances present in this case.[11]

9. See, United States v. Lee, 308 F.2d 715 (4th Cir. 1962); United States v. Hanon, 428 F.2d 101 (8th Cir. 1970).

10. The affidavit clearly failed to meet the criterion established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

11. Compare, Peterson v. United States, 411 F.2d 1074 (8th Cir. 1969); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); See, Von Cleef v. New Jersey,

**8**

Briddle has not cited any cases that support his contentions. He (and the Government) cites Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, noting that the Court in *Chimel* made no effort to separate items that may have been discovered and seized as a result of a lawful search incident to Chimel's arrest from those items that may have been seized as a part of the intensive search of the entire household when the arrest occurred. In *Chimel* there is no suggestion that the evidence disclosed which items were taken as a result of the search incidental to the arrest as distinguished from items that may have been seized as a part of the broader search. Apparently the Court in *Chimel* did not have before it any contention that separate consideration should be given to items seized solely and properly incident to the arrest as distinguished from other items seized. More to the point, *Chimel*, is readily distinguishable on the facts. In *Chimel*, armed with an arrest warrant, the officers with Chimel's wife were waiting for him to come home. When he arrived home he was arrested under circumstances that did not occasion the officers to conduct a cursory viewing of the house premises concurrently with the arrest as a security measure. Nor is there any indication in *Chimel* that any of the challenged items had been in the plain view of any officer who at the time he saw the item was in a place where he had a right to be as a part of a concededly proper security check of the area where the arrest occurred.[12] Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, cited by Briddle also is distinguishable. In *Katz* there were intentional eavesdropping activities secretly carried on in a planned invasion.

of the defendant's privacy with the objected to evidence resulting therefrom.

For the reasons stated above, the judgment of the District Court should be and is affirmed.

395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969).

12. In Chimel v. California, 395 U.S. 752, 768, 89 S.Ct. 2034, 2042, 23 L.Ed.2d 685 the Court stated: "The search here went far beyond the petitioner's person and the area from which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification in the absence of a search warrant, for extending the search beyond that area." And see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.