**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Cecil GAMBLE, Defendant-Appellant.**

**No. 72–1397.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1973.

Decided Feb. 12, 1973.

Ronald Marich, Chicago Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Richard F. Sprague, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

SWYGERT, Chief Judge.

Cecil Gamble, defendant-appellant, was convicted on an indictment charging him with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). On appeal he contends that the firearm for the possession of which he was convicted was illegally seized during a police search in violation of the fourth amendment, and that the district court erred in denying his motion to suppress the evidentiary use of that item at his trial.

### I

This case revolves around certain activity undertaken by the Police Department of Harvey, Illinois. On the night of February 7, 1970, Everett Davis appeared at the Harvey police station and complained that Gamble and two others, James Williams and Jerome Crowder, had abducted him at gun point and taken him to Gamble's home where they committed an aggravated battery and armed robbery. Williams and Crowder were immediately taken into custody. At the time Crowder was arrested, the police found and seized a weapon of the type which the complaining witness alleged had been used in the robbery.

Gamble was the next object of police attention. At about 12:30 in the morning of February 8, approximately seven officers proceeded to Gamble's residence for the purpose of securing his arrest.[1] They knocked on his door and received a response from a female voice inside, inquiring as to the identity of the knocker. After announcing their office and their intent to arrest Gamble, and upon hearing no reply but a "rustling" noise from behind the door, the officers broke down the door and entered with guns drawn.

Their initial entry carried them into the kitchen of Gamble's residence. To the officers' left was a doorway leading to a bedroom, to their right a blank kitchen wall. As they entered, Gamble and a woman were emerging from the bedroom; another woman was observed sitting at a table in the kitchen. Gamble was advised of his arrest, ordered to

---

1. Upon a complaint signed by Davis after his appearance at the police station, a local magistrate had issued an arrest warrant for Gamble.

raise his hands, and was frisked after being placed against the kitchen wall opposite the bedroom entrance.

One of the arresting officers then walked to the bedroom door and looked inside. Observing a figure on a bed to his left, the officer turned on the room light and determined that an infant child was lying on the bed. The officer entered the room and walked to the bed to "see that the baby was all right." He was closely followed by a second officer, who, looking about the room, observed and seized the weapon upon which this prosecution was based. While this was going on, other officers of the arrest team were conducting a thorough search of the rest of the residence, despite the fact that they possessed only a warrant for Gamble's arrest, not a warrant to search his premises.

## II

There is no principle more firmly rooted in our constitutional jurisprudence than that warrantless search is presumptively illegal. Only where the Government sustains a heavy burden of demonstrating that exigent circumstances rendered impossible the securing of a search warrant or conclusively proves that a knowing and voluntary consent to search was obtained may a warrantless search stand and the evidence therein seized be used at the trial of its owner. The Government does not seek to justify the instant search as one authorized by consent; its reliance, instead, is upon exigent circumstances it claims were present at the time Gamble's residence was searched. Police officers, it is argued, have the right to conduct a "protective sweep" of the residence in which an arrest occurs for the purpose of insuring their safety against attack from rooms beyond the site of arrest.

The issue, then, is one of the proper scope of search incident to an arrest. The same question was last before the United States Supreme Court in Chimel v. California, 395 U.S. 752, 89 S.Ct.

2034, 23 L.Ed.2d 685 (1969). The Court held:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. 395 U.S. at 762, 763, 89 S.Ct. at 2040.

In answer to the Government's contention that a search more extensive in scope was reasonable within the meaning of the fourth amendment, the Court ruled:

> There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The "adherence to judicial processes" mandated by the Fourth Amendment requires no less. 395 U.S. at 763, 89 S.Ct. at 2040.

In this case, we do not understand the Government to rely on any of the "well recognized exceptions" mentioned by the Court in Chimel. See, e. g., Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (consent); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit). We are thus invited to establish a new exception to the fourth amendment requirement of a warrant. We decline to do so.

This is not a case like United States v. Harris, 140 U.S.App.D.C. 270, 435 F.2d 74 (1970), where all three members of a robbery gang were at large, and police, finding two of the gang in an apartment, had reason to believe that the third was hiding elsewhere on the premises.[2] At the time of Gamble's arrest, both Williams and Crowder were safely in police custody. People v. Block, 6 Cal.3d 239, 103 Cal.Rptr. 281, 499 P.2d 961 (1971), and United States v. Broomfield, 336 F.Supp. 179 (E.D. Mich.1972), relied upon by the Government, are similarly distinguishable; in each case it was found that arresting officers had reason to believe that suspected drug violators other than those arrested were located in rooms beyond the site of arrest.[3]

Indeed, the Government's reliance on these cases is misplaced, since it does not contend that the feared presence of dangerous criminal suspects other than Gamble justified the search. Instead, we are presented with a list of other facts said to constitute exigent circumstances:

1. The police upon numerous occasions had responded to calls of "shots-fired" at defendant's address.

2. The outside of defendant's house resembled an embattled fortress;

   (a) the front door was boarded up due to a recent explosion, and

   (b) there were numerous bullet holes in the outside walls.

3. There had been a large gathering of 20–30 persons at defendant's house earlier in the day.

4. The defendant was accused of a violent crime involving a dangerous weapon.

5. The defendant was known to possess firearms, admitted to owning a handgun, and expressed a particular interest in automatic weapons.

6. The police heard "rustling" noises from inside defendant's house after announcing their office and purpose.

Only with difficulty might the first three of these circumstances be characterized "exigent" as we understand that term. They could readily have been presented to a magistrate by the Harvey police before the arrest of Gamble was undertaken. The same cannot be said of the last item on the list. Nonetheless, police officers will almost always be confronted with "rustling" noises when they knock on the door of an occupied home late at night; the party inside must awake, prepare himself to answer, and walk to the door. We think that arresting police must show considerably more than this to justify a search beyond *Chimel* limits even of the room directly behind the door, much less of rooms leading therefrom. The remaining reasons suggested by the Government relate only to Gamble and his violent propensities. Justifications like these were fully considered by the Court in *Chimel*, and warrant no search beyond the area within the immediate reach of the arrestee.

### III

Having ruled that the Harvey police violated the fourth amendment by entering Gamble's bedroom, we conclude that the doctrine of "plain view" provides no independent justification for the admission of the seized shotgun into evidence. Absent a legitimate prior intrusion, plain view of evidence cannot serve to justify its seizure. Coolidge v.

---

2. It is also instructive to note that the District of Columbia Court of Appeals upheld the *Harris* search as conforming to pre-*Chimel* constitutional interpretation. With respect to *Chimel*, the Court stated:

   It [the search at issue] probably would not be within the narrower range of permissible search incident to arrest as defined in Chimel v. California, 435 F.2d at 84, 85.

   The *Harris* search, which occurred in 1968, was upheld only because the Court determined that *Chimel* was not to be applied retroactively.

3. We intimate no view on the correctness of *Block* and *Broomfield*.

New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1972); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

The judgment of conviction is reversed.

FAIRCHILD, Circuit Judge (concurring).

The facts listed in the opinion suggests that violence was no stranger to the Gamble household. Nevertheless, on this record, I can join in the majority's skepticism that the police intrusion into Gamble's other rooms was solely a response to reasonably based concern lest other persons be present and endanger the officers. It would seem to me, however, that in a case where there was a reasonable basis for such concern, an appropriate, non-excessive, response by the officers would be recognized as an exception to the grabbing distance radius indicated in *Chimel*, 395 U.S. at p. 763, 89 S.Ct. 2034.