**UNITED STATES of America, Plaintiff,**

**v.**

**Arthur C. CHADWELL, Defendant.**

**Crim. A. No. 76–137.**

United States District Court,
D. Delaware.

Feb. 7, 1977.

W. Laird Stabler, Jr., U. S. Atty., and John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Henry duPont Ridgely, of Ridgely & Ridgely, Dover, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

The defendant, Arthur C. Chadwell, stands indicted by the grand jury of this district for unlawfully possessing a firearm within the meaning of 26 U.S.C. § 5845(a)(6) [a machine gun], being a Chinese 7.62 mm assault Rifle, Type 56, which was not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d).[1] The gun, magazines and ammunition therefor were seized by the Dover Police Officers during the course of a search of defendant's home after the officers had entered pursuant to an arrest and search warrant issued by Judge Russell Rash of Justice of Peace Court No. 7.[2] The defendant has moved to suppress the gun, magazines and ammunition for two principal reasons: First, de-fendant attacks the search warrant on the ground that it was based upon the errone-ous and reckless allegation contained in the probable cause affidavit that a confidential informant had observed property subject to seizure (unrelated to this case) within the defendant's residence when in fact he could have made no such observation since the property was never stored within the resi-dence but was at all times stored in a detached garage. Second, the defendant contends that the search of his home amounted to an unreasonable exploratory search which extended beyond the objects described in the warrant and beyond the place where defendant had informed the police officers that the property was locat-ed.[3]

An evidentiary hearing was held on de-fendant's motion on January 21, 1977.[4] Having considered the sufficiency and weight of the testimony adduced at the hearing, the demeanor and relationship of the witnesses who testified and the exhibits admitted into evidence, the Court finds the pertinent facts with respect to defendant's first contention to be as follows: On Au-gust 31, 1976, James Perry ("Perry") a po-lice informant, reported to Detective Ron-ald R. Brooks ("Brooks") a conversation he had with the defendant, a Smyrna Police Officer, that the defendant and another had encouraged him to provide defendant with stolen property such as mag wheels, auto-mobile tires and guns.[5] On September 29, Brooks obtained a pair of Cragar Verislot 14 x 7 chrome mag wheels, marked them for identification, and turned them over to Perry for sale to the defendant as stolen property.[6] Perry delivered and sold the wheels, which were contained in their origi-nal boxes, to the defendant on that date while Perry was under surveillance of the police officers and while wearing a body recorder which not only enabled the officers

---

1. Docket Item 1.

2. DX 7 & 8.

3. Docket Item 6.

4. Docket Item 17.

5. DX 7; Transcript of hearing ("Tr.") 130–133; 40–41; 79–80.

6. DX 7.

to hear Perry's conversation with the defendant but simultaneously recorded the conversations on magnetic tape.[7] Again on October 10, Brooks obtained a second pair of the same type of mag wheels, marked them for identification, turned them over to Perry who sold them to defendant as purportedly stolen property while under the same kind of police surveillance.[8]

On October 19, 1976, again at Brooks' suggestion, Perry visited defendant's Dover residence to deliver four purportedly stolen tires which had been requested by the defendant.[9] At the time of Perry's visit, defendant, who was alone in his home, was engaged in removing shelving from a hall closet so that it could be converted into a coat closet.[10] It was during this visit that Perry noticed at least one box which he recognized as an original container for a mag wheel at the bottom of the closet on which defendant was working.[11] After Perry's visit at defendant's house, he reported to Brooks that he had observed the mag wheels in a closet of defendant's home.[12] On the basis of Perry's report, Brooks stated in the probable cause affidavit submitted to Judge Rash that "the confidential informant [Perry] alleges that on October 19, 1976, while at the residence of Arthur C. Chadwell, he observed four mag wheels in a closet."[13]

The defendant,[14] his wife[15] and two children,[16] ages 12 and 8, testified that the mag wheels purchased from Perry were never stored in his residence but rather were stored in his detached garage located at the rear of his property where they were found by the police officers on October 22, 1976.

On the basis of this impeaching testimony, defendant contends that paragraph 27 of the affidavit filed in support of the search warrant misrepresented the location of the mag wheels, that this misrepresentation was material to the magistrate's finding of probable cause to search defendant's residence, and that because of the misrepresentation of that material fact, the evidence seized in the residence under the search warrant must be suppressed. In support of this contention, defendant relies upon the law of the Seventh and Eight Circuits that suppression is required if it is found that governmental authorities have intentionally or recklessly misrepresented a material fact in a probable cause affidavit, *United States v. Carmichael*, 489 F.2d 983, 988–989 (C.A.7, 1973); *United States v. Marihart*, 492 F.2d 897, 900 (C.A.8, 1974), *cert. denied* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974), or the law of the Fifth Circuit which holds that contraband seized pursuant to a search warrant must be suppressed if the probable cause affidavit contains a misrepresentation (1) made with intent to deceive the magistrate regardless of whether the error was material to showing probable cause or (2) if made unintentionally but the erroneous statement is material to establishing probable cause for the search. *United States v. Thomas*, 489 F.2d 664, 669 (C.A.5, 1973). While the Third Circuit has recognized both standards, the Court of Appeals has not yet selected one over the other. *United States v. Vento*, 533 F.2d 838, 858 (C.A.3, 1976).

However, having heard and weighed all the testimony, the Court is convinced that under either standard Brooks did not make an erroneous material allegation to the magistrate. First, the statement that Perry had "observed four mag wheels in the closet" was not made intentionally to deceive the magistrate. From Brooks' knowledge of prior surveillances and electronic contact with his informant, it was reasonable for him to believe Perry's state-

---

**7.** *Id.*

**8.** *Id.*

**9.** DX 7; Tr. 36; 47; 133–134.

**10.** Tr. 137; 143–144; 37; 61; 69–70.

**11.** Tr. 137–138; 144–146.

**12.** Tr. 140; 146–147; 86.

**13.** DX 7, par. 27.

**14.** Tr. 22; Docket Item 6, exhibit thereto.

**15.** Tr. 60; Docket Item 6, exhibit thereto.

**16.** Tr. 74, 76.

ment that the mag wheels were observed in the closet. Furthermore, if Perry alleged that he observed "four mag wheels" when in fact he only saw a box which he reasonably assumed contained "one wheel" in the closet this error in number was not material to a showing of probable cause for the house search. Accordingly, I find no merit to defendant's first ground for suppressing the evidence seized.

Turning now to defendant's second ground for suppression, namely, that the house search was unreasonable and exploratory, I find the following pertinent facts: Armed with an arrest and search warrant to search defendant's residence, garage and vehicles, Brooks and other police officers proceeded to defendant's home on October 22, 1976 where they found the defendant and his wife.[17] Brooks advised defendant that he had a warrant for his arrest for attempting to receive stolen property and a warrant to search his premises for the mag wheels and tires.[18] Defendant then volunteered to the officers that the property described in the search warrant was in his garage.[19] The police, however, ignored his remarks, advised him that he was under arrest and gave him his *Miranda* warnings.[20] Brooks then, leaving the defendant in the living room under guard, proceeded toward the back of the house, checking the hall closet on the way and the two bedrooms adjoining the short hall.[21] Brooks looked into the hall closet for the mag wheels and made a cursory inspection of the bedrooms for the wheels and to determine whether anyone else was in the premises.[22] As Brooks approached the rear bedroom, he noticed in plain sight what appeared to be a machine gun in the topmost position of a rifle rack hanging on the south bedroom wall.[23] The gun, the object of the present indictment, was seized as contraband.[24] Continuing into a side bedroom and looking into a second closet for the mag wheels, the officers found a green plastic bag containing the magazine and ammunition behind some other personal clothing articles on the top shelf.[25] The boxes containing the mag wheels measured[26] 15½" × 15½" × 8", a size that could easily fit into a closet. Thereafter a search was made of defendant's motor vehicles and the detached garage.[27] The four mag wheels and four tires, described in the search warrant, were found under a covering in defendant's garage.[28]

▮ Based on these facts, the defendant makes two arguments: First, he contends that the police officers should not have made a search of his residence for the mag wheels and tires described in the search warrant after the defendant informed the officers that those items were in his garage. The Court does not agree. The officers were properly in the home pursuant to a valid search warrant to look for mag wheels. It was eminently reasonable for the officers to make a cursory search for four boxes of wheels in the home and also to look through the rooms for the presence of other persons. In such a cursory inspection of a place when the police officer is justified in searching, the officers may seize contraband which is in plain view. In *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), the Supreme Court stated:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came

17. Tr. 11–13; 63–64; 87–88.

18. Tr. 14; 87–88; 95.

19. Tr. 14–15; 88.

20. Tr. 87–88.

21. Tr. 16; 65; 88–89.

22. Tr. 97–98.

23. Tr. 89; 96–97; 102–103; 18.

24. DX 8.

25. Tr. 90; 103; 18; 65–66.

26. Tr. 105–106.

27. Tr. 44; 66–67; 91.

28. Tr. 91; DX 8.

inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to a lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure."

Thus, in this case, since the police intrusion into the home was legally justified by the arrest and search warrant, the officers could make a search for the mag wheels, and in so doing, they were entitled under the "plain view doctrine" to seize the machine gun as contraband which was hanging in clear sight on a wall gun rack. *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Blake,* 484 F.2d 50, 59 (C.A.8, 1973) (concurring opinion); *United States v. Briddle,* 436 F.2d 4, 7 (C.A.8, 1970). However, the Court agrees with the defendant that the detailed search of the top shelf of the closet where the magazine and ammunition were found behind other articles was unreasonable under the warrant. This is so because it was not reasonable to believe that the mag wheels could have been stored on such a small space. Furthermore, the ammunition and magazine were not in plain view. Thus, a more detailed search of the small shelf which could not have possibly held the mag wheels became an unreasonable exploratory and general search. Thus, the motion to suppress the magazine and ammunition will be granted.

Defendant's second contention that the house search was unreasonable after the defendant informed the officers that the mag wheels and tires were stored in the garage is also without merit. The validly issued search warrant authorized the officers to search the defendant's premises for the mag wheels and tires.[29] This Court knows of no authority, and none has been cited by the defendant, that requires officers executing a valid search warrant to accept the word of the person whose property is being searched as to the location of the objects of the search regardless of the command of the warrant. The fact that the defendant told the officers that the objects of the search warrant were not in the house does not establish the lack of the officers' good faith in carrying out their search for those objects in a place they were legally entitled to search.

An order will be entered in accordance with this opinion.