550 A.2d 79
**Jerome Edward BUIE**
v.
**STATE of Maryland.**
**No. 161, Sept. Term, 1987.**
Court of Appeals of Maryland.
Nov. 28, 1988.

John L. Kopolow, Asst. Public Defender, Alan H. Murrell, Public Defender, on brief, Baltimore, for appellant.

Norman L. Smith, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., both on brief, Baltimore, for appellee.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

The warrantless search and seizure of a residential basement produced a red running suit that was instrumental in the conviction of petitioner, Jerome Edward Buie (Buie), of armed robbery and the use of a handgun in the commission of a felony. We shall hold that the search and seizure were unconstitutional because they violated rights established by the fourth amendment to the United States Constitution. The warrantless search of the basement was not supported by probable cause to believe that the requisite exigent circumstances existed.

At Buie's jury trial in the Circuit Court for Prince George's County (Jacob S. Levin, J., presiding) part of the evidence produced by the State was the red running suit. A witness to the robbery identified Buie as one of two robbers, and more specifically, as the one who wielded a handgun and wore a red running suit. The red suit had

been seized from Buie's basement under circumstances explained at his unsuccessful motion to suppress that damning piece of evidence.

Facts before Judge Levin at the suppression hearing established that two men had robbed a Godfather's Pizza Restaurant on 3 February 1986. On that same date the police obtained arrest warrants for Buie and his alleged accomplice, Lloyd Allen (Allen). Buie lived at 5400 67th Avenue, Riverdale, Prince George's County. That dwelling was under police surveillance, apparently from the time of the issuance of the arrest warrant. On 5 February, around mid-afternoon, the police, it seems, satisfied themselves that Buie was at home. They did this by arranging to have a telephone call made to Buie's dwelling; the call verified Buie's presence, and that of a young woman, at that location.

Arrest warrant in hand, the police went to 5400 67th Avenue. They had no search warrant. The party numbered six or seven officers. They entered the home and began to look for Buie on the first and second floors. A Corporal Rozar arrived; he ascertained that the other officers had not yet "cleared the basement" of the house. Rozar undertook to "freeze the basement" by standing at the top of the basement stairs so anyone who might be there could not come up behind the other officers. With service revolver drawn, Rozar twice "yelled down to the basement for anyone down there to come out." When a voice inquired as to who was calling, Rozar said it was the police. Eventually, Buie emerged from the basement, ascended the stairs, and was searched, handcuffed, and arrested by Rozar.

At that point Detective Frolich entered the basement; he noticed, in plain view, a red running suit "that fitted the description ... as being a jumpsuit worn by one of [the robbery suspects];" he seized it. It bears repeating that the police had no search warrant. To the best of their knowledge, Buie and an unidentified girl or woman were the only occupants of the dwelling. Rozar testified that he

was not concerned about any danger. Frolich testified that he entered the basement "in case there was someone else [there]."

 Based on this evidence, Judge Levin decided they had a right to search and they had a right to seize, based on the facts of this case. The man comes out from a basement, the police don't know how many people are down there. He is charged with a serious offense.

I think the police acted reasonably in this case and if they had gone back to get a [search] warrant, that wouldn't have been there.[1]

He denied the motion to suppress.[2]

---

**1.** Judge Levin's apparent alternative basis for approving the search and seizure seems to have been founded on some notion of a search for evidence justified because the running suit "wouldn't have been there" had the police sought a search warrant. In view of *Stackhouse v. State*, 298 Md. 203, 468 A.2d 333 (1983), the State wisely has not attempted to gain affirmance on that basis.

**2.** During the course of the trial, the State "reopened" the suppression hearing, apparently to produce additional evidence to support the favorable ruling it had already received. At this hearing, Detective Frolich, over Buie's objection, testified that on the day of Buie's arrest, Frolich had an arrest warrant for Buie's alleged accomplice, Allen; that Allen was still at large; that Allen and Buie had been arrested in the preceding November for another armed robbery; that Buie and Allen "were running together"; and that a handgun had been used in the February robbery. Frolich also had an extraordinary return of memory. He now recalled that he had entered the basement specifically "[t]o see if the co-defendant, Mr. Allen, may be in the basement." Judge Levin renewed his denial of the motion to suppress.

"In determining whether the denial of a motion to suppress ... is correct, the appellate court looks to the record of the suppression hearing, and does not consider the record of the trial itself." *Trusty v. State*, 308 Md. 658, 670, 521 A.2d 749, 755 (1987) [citation omitted; ellipsis in original]. Nor will an appellate court consider the record of a suppression hearing, "reopened" at the State's request, when the trial court has previously denied a motion to suppress evidence. "If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, in the exercise of its discretion, grants a hearing de novo on a renewal of the motion." Md.Rule 4–252(g)(2). In this case there was no renewal of the motion. Thus, the trial judge should not have reopened the suppression hearing, and any evidence introduced at the reopened hearing will not be considered on appeal.

The Court of Special Appeals affirmed the trial court's denial of the motion to suppress the running suit, holding that the warrantless search and seizure were reasonable because "if there is reason to believe that the arrestee had accomplices who are still at large, something less than probable cause—reasonable suspicion—should be sufficient to justify a *limited additional intrusion* to investigate the *possibility* of their presence." *Buie v. State*, 72 Md.App. 562, 576, 531 A.2d 1290, 1297 (1987) [emphasis in original]. We granted certiorari to decide the important issue involved.

■ The fourth amendment provides that "[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures shall not be violated...." U.S. Const. amend. IV. *See also Steagald v. United States*, 451 U.S. 204, 212, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38, 45 (1981) (" '[T]he Fourth Amendment has drawn a firm line at the entrance to the house.' "); *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1374–1375, 63 L.Ed.2d 639, 644 (1980) (police may not make a warrantless entry into a suspect's home in order to make a routine felony arrest); *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734, 739 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."); *United States v. Winsor*, 846 F.2d 1569, 1574 (9th Cir.1988) ("[T]he expectation of privacy in one's home is ... most jealously guarded by the Fourth Amendment...."). Police are, whenever practicable, required to obtain a search warrant, supported by probable cause, from a neutral and detached magistrate. *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 112, 95 S.Ct. 854, 862, 43 L.Ed.2d 54, 64 (1975).

■ Upon the arrest of an individual, in his home and when there is no search warrant, the police ordinarily may only search the area of the house within his immediate control. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). And there is generally "no ...

justification ... for routinely searching any room other than that in which the arrest occurs...." *Id.* at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Many federal and state courts have held, however, that the scope of a search incident to arrest may exceed the suspect's "wingspan" when exigent circumstances exist. *See generally* 2 W. LaFave, *Search and Seizure* §§ 6.4(b)–(c) (2d ed. 1987); 1 W. Ringel, *Searches & Seizures, Arrests and Confessions* § 12.6(a) (1979); Joseph, *The Protective Sweep Doctrine: Protecting Arresting Officers From Attack by Persons Other Than the Arrestee,* 33 Cath.U.L.Rev. 95 (1983); Kelder & Statman, *The Protective Sweep Doctrine: Recurrent Questions Regarding the Propriety of Searches Conducted Contemporaneously With an Arrest On or Near Private Premises,* 30 Syracuse L.Rev. 973 (1979); Project, *Seventeenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1986–1987,* 76 Geo.L.J. 521, 587–588 (1988). The burden to show the existence of exigent circumstances rests with the government. *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409, 413 (1970); *Stackhouse v. State,* 298 Md. 203, 217, 468 A.2d 333, 341 (1983). These exigent circumstances often are claimed in the guise of a protective sweep of the premises.[3]

A protective sweep consists of a brief cursory search, in most cases, intended to secure the premises,

---

**3.** Other exigent circumstances permit police to conduct warrantless searches. *See, e.g., Warden v. Hayden,* 387 U.S. 294, 298–299, 87 S.Ct. 1642, 1645–1646, 18 L.Ed.2d 782, 787 (1967) ("hot pursuit" of a fleeing suspect into a dwelling); *Schmerber v. California,* 384 U.S. 757, 770–771, 86 S.Ct. 1826, 1835–1836, 16 L.Ed.2d 908, 919–920 (1966) (imminent destruction of evidence); *Ker v. California,* 374 U.S. 23, 40–41, 83 S.Ct. 1623, 1633–1634, 10 L.Ed.2d 726, 742 (1963) (imminent destruction of evidence in a dwelling). *But see Mincey v. Arizona,* 437 U.S. 385, 394, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 301 (1978) (seriousness of offense under investigation does not create exigent circumstances); *Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409, 414 (1970) (an arrest in front of suspect's dwelling is not an exigent circumstance that will justify a warrantless search of the dwelling).

protect the police from any persons hiding or remaining on the premises, or to find accomplices of the arrestee for whom the police also have arrest warrants. *See, e.g., United States v. Caraza,* 843 F.2d 432, 435 (11th Cir.1988) (per curiam); *United States v. Standridge,* 810 F.2d 1034, 1037 (11th Cir.) (per curiam), *cert. denied,* 481 U.S. 1072, 107 S.Ct. 2468, 95 L.Ed.2d 877 (1987); *United States v. Bernard,* 757 F.2d 1439, 1443 (4th Cir.1985); *United States v. Apker,* 705 F.2d 293, 306 (8th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984), 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Gardner,* 627 F.2d 906, 909–910 (9th Cir.1980); *United States v. Christophe,* 470 F.2d 865, 869 (2d Cir.1972), *cert. denied,* 411 U.S. 964, 93 S.Ct. 2140, 2162, 36 L.Ed.2d 684 (1973); *see generally* 2 W. LaFave, *supra,* §§ 6.4(b)–(c).[4]

█ In *United States v. Briddle,* 436 F.2d 4 (8th Cir. 1970), *cert. denied,* 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 824 (1971), the court distinguished *Chimel* from those cases where a cursory search is necessary. *Briddle,* 436 F.2d at 8. The court noted that the police officers in *Chimel,* armed with an arrest warrant, were at Chimel's home, with his wife, waiting for him to arrive home. *Id.* Further, Chimel "was arrested under circumstances that did not occasion the officers to conduct a cursory viewing of the house premises concurrently with the arrest as a security measure." *Id. See also Payton,* 445 U.S. at 589, 100 S.Ct. at 1381, 63 L.Ed.2d at 652 (recognizing that, upon the

---

**4.** A "protective sweep" and a "search for potential accomplices" are often classified as separate exigent circumstances which may justify warrantless intrusions. *See* 2 W. LaFave, *Search and Seizures* §§ 6.4(b)–(c) (2d ed. 1987). Nevertheless, the rationale supporting these searches are in many cases the same—safety and protection of law enforcement officers. *See generally id.* In the present case Corporal Rozar testified that he was not concerned about any danger. Nonetheless, the fact that an accomplice to an armed robbery was on the loose arguably might support the inference that safety was a concern of the arresting officers. The terms "protective sweep" and "search for potential accomplices" are indistinguishable in this case. For the sake of brevity, the term protective sweep will be used hereinafter.

execution of an arrest warrant, there may be a need to check the premises for safety reasons). If the police have justifiably carried out a protective sweep, any evidence or contraband in plain view may be seized. *See, e.g., Bernard,* 757 F.2d at 1443; *see generally Arizona v. Hicks,* 480 U.S. 321, 325–26, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 354–355 (1987); *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 582 (1971).

■ When we assess the seriousness of an intrusion, whether it be a protective sweep or some other type, we consider the objective expectation of privacy that may exist, as well as the governmental interest served by the intrusion. *See Doering v. State,* 313 Md. 384, 397, 545 A.2d 1281, 1287 (1988). Thus, when the intrusion is slight, as in the case of a brief stop and frisk on a public street, and the public interest in prevention of crime is substantial, reasonable articulable suspicion may be enough to pass constitutional muster. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Lee v. State,* 311 Md. 642, 537 A.2d 235 (1988). *See also New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (lower expectation of privacy in a public school); *Winsor,* 846 F.2d at 1575–1579 (illustrating that the Supreme Court has upheld searches, conducted on less than probable cause, only in public places which, by their nature, give rise to a lower expectation of privacy). And because the expectation of privacy in a motor vehicle is less than in a home, "the exceptions [to the warrant requirement] are more numerous." *Doering* 313 Md. at 397, 545 A.2d at 1288. *See also New York v. Class,* 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). But

> [w]hen the expectation of privacy is legitimately high, only the most exigent circumstances will justify a warrantless intrusion. Thus, when the sanctity of the home is involved, the exceptions to the warrant requirement are few.

*Doering* 313 Md. at 397, 545 A.2d at 1287–1288.

■ Thus, to justify a protective sweep of a home, the government must show that there is probable cause to

believe that " 'a serious and demonstrable potentiality for danger' " exists. *United States v. Kolodziej,* 706 F.2d 590, 596 (5th Cir.1983) (quoting *United States v. Smith,* 515 F.2d 1028, 1031 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 322 (1976)). *See also United States v. Cravero,* 545 F.2d 406, 418 (5th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977), 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977) (cursory safety check permitted if circumstances provide, at minimum, probable cause to believe a serious threat to safety is present); and *Commonwealth v. Elliott,* 714 S.W.2d 494, 496 (Ky.Ct.App.1986) (burden is on government to prove that officers had probable cause to believe there was serious threat of danger). The Supreme Court has taken the probable cause approach to the exigent circumstance of "hot pursuit." *See United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–2410, 49 L.Ed.2d 300, 305 (1976) (police must have probable cause to follow a suspect in "hot pursuit" into a dwelling). *See also Hicks,* 480 U.S. at 328, 107 S.Ct. at 1154, 94 L.Ed.2d at 356 ("A dwelling place search ... requires probable cause....").[5]

We recognized the same principle when, in the context of the warrantless search of a dwelling, we observed that "exigency implies urgency, immediacy, and compelling need," *Stackhouse,* 298 Md. at 212, 468 A.2d at 338, and "that the exception for exigent circumstances is to be construed narrowly." *Id.* at 215–216, 468 A.2d at 340. *See also, e.g., Mincey v. Arizona,* 437 U.S. 385, 393–394, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 301 (1978) (warrant required to search a home unless the exigencies are compelling).

---

**5.** Probable cause must be based on an objective standard because " '[i]f subjective good faith alone were the test, the protections of the fourth amendment would evaporate, and the people would be "secure in their ... houses ...," only in the discretion of the police.' " *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968) [citation omitted]. *See also Herod v. State,* 311 Md. 288, 299, 534 A.2d 362, 367 (1987) (police officer's subjective determination that investigatory stop was justified is not controlling).

With these principles in mind, we turn again to this case. The State insists that, on the facts of this case, a reasonable police officer would have had ample ground to believe that there was an accomplice in Buie's home and that a sweep was required to ensure the safety of the arresting party. It relies to a considerable extent on a line of cases following *Guevara v. Superior Court*, 7 Cal.App.3d 531, 86 Cal.Rptr. 657 (1970). In that case, police arrested Guevara, a drug dealer, in the living room of his home. *Guevara* at 533, 86 Cal.Rptr. at 658. They then searched the kitchen and found drugs. *Id.* The California appellate court found the search a proper effort to seek possible confederates. *Id.* at 534–535, 86 Cal.Rptr. at 659. But the facts before the court in *Guevara* were far more substantial than those before the Circuit Court for Prince George's County in this case. In the California case, the police had been informed that other persons frequented Guevara's apartment and that a drug buyer from San Francisco was expected momentarily. They had specific information showing a likelihood, a real probability, that confederates would be present. In our case we have no more than the knowledge that two days previously Buie had been accompanied by an accomplice, Allen, when the robbery was committed.

A case more helpful to the State is *People v. Block*, 6 Cal.3d 239, 499 P.2d 961, 103 Cal.Rptr. 281 (1971) (en banc). There, police raided a "pot party" in a home, arresting Block and three others in the living room and two additional merry makers in the adjacent dining room. *Block*, 6 Cal.3d at 241–242, 499 P.2d at 961–962, 103 Cal.Rptr. at 281–282. The stairway lights in the large house were on, and a policeman went upstairs to look for other partygoers. *Id.* at 242, 499 P.2d at 962, 103 Cal.Rptr. at 282. He found none, but did discover marijuana. *Id.* That warrantless search was upheld because there might have been other felons in the dwelling; the party was of indeterminate size, and the stairway lights were on. *Id.* at 245–246, 499 P.2d at 964–965, 103 Cal.Rptr. at 284–285. But in our case there was no gang of indeterminate size, no knowledge that

anyone but Buie and the young woman were in the house, and nothing like a lighted stairway to suggest that the contrary might be true. We find apt the language of another California case in which a warrantless protective sweep was struck down:

> There is, of course, always the possibility that some additional person may be found in a house outside of which an arrest took place. But the mere possibility of additional persons in the house, without more, is not enough to provide probable cause to search the entire premises for additional suspects once the suspect whom the officers had sought was arrested.

*Dillon v. Superior Court,* 7 Cal.3d 305, 314, 497 P.2d 505, 511, 102 Cal.Rptr. 161, 167 (1972) (en banc).

In some respects, *Guevara* is like *United States v. Bernard,* 757 F.2d 1439 (4th Cir.1985). In that case, police, in a helicopter, conducted a surveillance of suspected marijuana fields in West Virginia. *Bernard,* 757 F.2d at 1440. From the air, the police spotted three adults. *Id.* at 1441. The ground crew, upon their arrival on the scene, located only two adults; upon being questioned by the ground crew, one of the two adults denied that a third was present. *Id.* at 1442. In order to confirm their suspicion that a third person might be around, the police conducted a protective sweep of the curtilage of the farm. *Id.* During the course of the protective sweep, the police located marijuana in the barn. *Id.* The defendant's motion to suppress the evidence was denied by the district court. *Id.* The Fourth Circuit affirmed, noting that the police had a reasonable fear for their safety based upon the circumstances of the case: the missing third person, the defendant's evasive response to questioning, and the nature of the growth and trade of illegal drugs. *Id.* at 1443. The court held that the evidence was in plain view and could be seized during the properly conducted sweep. *Id.* In *Bernard,* as in *Guevara* (but not in the case before us), the police had information about the presence of additional but unaccounted for accomplices. Further, in *Bernard* (but not here) there also were the

evasive answers. *See also Doering,* 313 Md. at 400–401, 545 A.2d at 1289 (warrantless search of bus upheld when arrested suspects lied about presence of others in the vehicle and police did not know whether others were aboard).

Some courts, it is true, seem to require a level of suspicion (or exigency) even less than that present in *Guevara* or *Bernard. See, e.g., United States v. Jackson,* 778 F.2d 933, 936–937 (2d Cir.1985), *cert. denied,* 479 U.S. 910, 107 S.Ct. 308, 93 L.Ed.2d 282 (1986) (protective sweep allowed based on general knowledge that drug dealers are often armed and possible destruction of evidence); *United States v. Marszalkowski,* 669 F.2d 655, 665 (11th Cir.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 167 (1982) (the fact that drug dealers are likely to be armed and dangerous and that drugs can be easily disposed of justified protective sweep). There appears to be no clear majority position on the issue. *See Jackson v. United States,* 479 U.S. 910, 910, 107 S.Ct. 308, 308, 93 L.Ed.2d 282, 282–283 (1986) (White, J., dissenting to denial of writ of certiorari and noting split among the federal circuits on the issue); *United States v. Gardner,* 627 F.2d 906, 910 n. 3 (9th Cir.1980) (same); Joseph, *supra,* at 119, 119 n. 144; Kelder & Statman, *supra,* at 1006–1035, 1008 n. 106. We believe, however, that the Supreme Court decisions require a high showing of exigent circumstances when the warrantless search of a home is implicated. And we believe that our cases, such as *Doering* and *Stackhouse,* as well as cases from other courts, have recognized this principle.

For example, in *United States v. Hatcher,* 680 F.2d 438 (6th Cir.1982), the police arrested the defendant in his basement. *Hatcher,* 680 F.2d at 442–443. Thereafter, they found cocaine during the course of a protective sweep. *Id.* They had, however, no evidence that the defendant was dangerous or that any other persons were on the premises at the time of the arrest. *Id.* at 444. The court reversed the district court's determination that the sweep was permissible because " 'the subject of drugs is a dangerous one ... especially' " for law enforcement officers, and held that

the sweep violated the fourth amendment. *Id. See also United States v. Kinney,* 638 F.2d 941, 944 (6th Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3056, 69 L.Ed.2d 423 (1981) (requiring that "a serious and demonstrable potential for danger exists" before a protective sweep will be permitted).

In *United States v. Gamble,* 473 F.2d 1274 (7th Cir.1973), three individuals were accused of aggravated battery and armed robbery. *Gamble,* 473 F.2d at 1275. Two of the defendants were immediately taken into custody by the police. *Id.* Thereafter, the police obtained an arrest warrant for the third defendant (Gamble). *Id.* at 1275 n. 1. They went to Gamble's residence, knocked on the door, and identified themselves as police officers. *Id.* at 1275. The police received no reply but heard "rustling" noises from within. *Id.* They broke into the residence and found Gamble and a woman emerging from a bedroom and another woman in the kitchen. *Id.* The police arrested Gamble and proceeded to go into the bedroom, presumably to check upon a baby they had noticed. *Id.* at 1276. There, they observed the weapon upon which Gamble's prosecution was based. *Id.*

The Seventh Circuit held that this protective sweep was unconstitutional. *Id.* at 1276–1277. The court found that the government's arguments justifying the search, including that the defendant was accused of a violent crime involving a dangerous weapon, his interest in handguns, and the feared presence of dangerous criminals were unconvincing. *Id.* at 1277. In particular, the court noted that Gamble's two accomplices in the crime were both safely in police custody. *Id.* Thus, the police were not permitted to search beyond the *Chimel* limits; there were no justifying exigent circumstances. *Id.*

Finally, we return to the Fifth Circuit's decision in *United States v. Kolodziej,* 706 F.2d 590 (5th Cir.1983). The facts are quite similar to those now before us. Some half-dozen police officers, armed with a warrant, arrested Kolodziej, a drug dealer, inside the front doorway of his home. *Kolodziej,* 706 F.2d at 592. They then conducted a cursory

"safety check" of the remainder of the dwelling—an activity they attempted to justify because a tipster had advised them that Kolodziej was known to be armed and occasionally worked with a partner called "Barney." *Id.* The Fifth Circuit found the justification insufficient to show the necessary exigent circumstances:

We conclude that no circumstances are present in this case which would have led a reasonable man to believe that his safety was endangered. The only evidence offered by the government to justify the security sweep was the testimony of one of the arresting officers that he thought there was a possibility that a man named "Barney", who worked with the defendant, might be in residence at the time of the arrest, and that Kolodziej occasionally carried a .357 magnum pistol. No evidence was presented to show how the officers had reason to believe that Barney was there, in fact had ever been there, or was dangerous. Drug dealers frequently have accomplices, but that fact alone does not justify a warrantless search. That the defendant carried a firearm is also insufficient. At the time the officers made the safety check, Kolodziej was already in custody, unarmed, handcuffed, and clearly no threat to the half-dozen agents present at the arrest.

*Id.* at 597.

■ This statement could be applied to our case almost verbatim. True it is that the police were aware that Allen had participated with Buie in the Godfather's Pizza robbery. But it is also true that the police had no information supporting a serious and demonstrable likelihood that Allen was in the dwelling at the time of Buie's arrest or had ever been or even visited there. Indeed, the police had Buie's home under surveillance since the robbery and apparently had not spotted Allen in or about the dwelling. Nor did their pre-arrest telephone call indicate the presence there of anyone but Buie and the young woman. As to that, Detective Frolich knew only that there was a man and a girl in the house.

True, a gun had been used in the robbery. But this fact was not mentioned at the suppression hearing. Moreover, at the time of the warrantless search, Buie was safely outside the house, handcuffed and unarmed. *See also Stackhouse v. State,* 298 Md. 203, 217–218, 468 A.2d 333, 341 (1983) (fact that defendant was handcuffed and outside attic where evidence was found prevented justification of search on basis of *Chimel* ).

In summary, the facts in this case simply do not provide probable cause to support a reasonable belief that an accomplice was in Buie's home, that other confederates might have been there, or that any other serious and demonstrable potentiality for danger existed. There was insufficient showing of exigent circumstances to support a warrantless search of the home. The red running suit should have been suppressed.[6]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.

McAULIFFE, J., dissents, in which MURPHY, C.J., and RODOWSKY, J., join.

McAULIFFE, Judge, dissenting.

I cannot agree that the limited intrusion by the police into the basement of Buie's home constituted an unreasonable search in violation of the Fourth Amendment.

The majority acknowledges that a Fourth Amendment determination of reasonableness involves a balancing of the

---

6. We decline to rule that the fourth amendment offers less protection to one in a home when a search is "cursory" as opposed to "full blown." A search is a search. *Hicks,* 480 U.S. at 327, 107 S.Ct. at 1154, 94 L.Ed.2d at 356. If the search of a home is warrantless, it ordinarily must be justified by exigent circumstances not present here.

nature of the intrusion against the objectively reasonable expectation of privacy that exists under the particular circumstances. Yet, the majority insists on considering the intrusion in this case exactly as if it were a warrantless entry across the threshold of the home. It is not. The officers crossed the threshold of this home in strict compliance with the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). They had a warrant for Buie's arrest for armed robbery and they had reason to believe Buie was within the home. The question in this case is not the nature of exigent circumstances required to justify the warrantless entry into a home, but rather the exigency that will justify a limited additional intrusion following a prior valid entry.

When the police team entered Buie's home armed with a valid warrant for his arrest, they fanned out to begin the search. Unquestionably, the police could have gone into the basement at that time. As the Supreme Court said in *Payton v. New York, supra:*

If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. *Id.*, 445 U.S. at 602–03, 100 S.Ct. at 1388.

Being legitimately in the basement area, the police could have seized the red running suit, which was in plain view and which the police had probable cause to believe was evidence of a recent felony. *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). The distinction in the present case is that Buie came out of the basement and his arrest was completed before the police entered the basement. I do not suggest that this is a distinction without a difference. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), holds that the police have no automatic right to search an entire home merely because a person is arrested therein. Yet, the consideration of the totality of circumstances, including the extent of the right of the officers to search the entire home which existed until

Buie changed the situation by surrendering at the top of the stairs, is helpful in understanding the level of expectation of privacy that the law will reasonably afford to Buie concerning items in plain view in the basement.

Moreover, *Chimel* addresses full-blown searches and I do not suggest that the police would have been entitled to conduct such a search of this basement. The only search that was reasonable under these circumstances was a limited search for a person or persons. This type of search is less intrusive, and may be accomplished fairly quickly. It does not permit the opening of desks or the examination of documents.

The type of search that was conducted in this case was justified under the circumstances. Buie was arrested only after hiding in the basement. Sergeant Dunn had yelled down into the basement when the police arrived, but received no response. Corporal Rozar then twice yelled into the basement for anyone to come out before Buie finally responded. The police had probable cause to believe that the armed robbery which had occurred 48 hours earlier had been committed by two persons—Buie and Lloyd Allen. The police had obtained arrest warrants for, and were looking for, both of them. Contrary to the statement in the majority opinion that "to the best of [the police officers'] knowledge, Buie and an unidentified girl or woman were the only occupants of the dwelling," the police did not know how many persons were in the home. They knew that Buie and a woman were present—they did not know how many more persons might have been present. For the police to make a quick sweep of the basement from which Buie had emerged was reasonable, whether to check for the presence of the accomplice who had so recently been involved with Buie and an armed robbery, or to protect themselves from others who might have been hiding with Buie. The Court of Special Appeals properly considered the extent of Buie's privacy interests, the limited nature of the intrusion, and the exigencies of the situation in concluding that the search

was reasonable. *Buie v. State*, 72 Md.App. 562, 570–76, 531 A.2d 1290 (1987). I would affirm.

MURPHY, C.J., and RODOWSKY, J., have authorized me to say that they join in this dissenting opinion.