# WAYNE ARTHUR JONES *v.* STATE OF MARYLAND

[No. 1321, September Term, 1980.]

*Decided May 13, 1981.*

The cause was argued before LISS, WILNER and WEANT, JJ.

*John L. Kopolow, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Maureen O'Ferrall, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and

*Warren F. Sengstack, State's Attorney for Calvert County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Wayne Arthur Jones, appellant, was charged by indictment on April 22, 1980 in the Circuit Court for Calvert County with: assault with intent to rape (count 1); assault with intent to maim (count 2); assault and battery (count 3); and attempted rape (count 4). Appellant was tried by a jury on June 9-10, 1980, and was convicted of counts 1 and 3. The court granted appellant's motion for judgment of acquittal on count 2 and the State *nol prossed* count 4. On July 28, 1980, appellant was sentenced to serve two concurrent fifteen year sentences. From these judgments, he takes this appeal. Three issues are raised to be determined by this Court:

1.  Whether the trial court erred in denying appellant's motion to suppress the admission of his tennis shoes into evidence?
2.  Whether the trial court erred in denying appellant's motion to suppress oral and written statements given to police?
3.  Whether there was sufficient evidence to sustain appellant's convictions?

### 1.

Pursuant to appropriate motion, a suppression hearing was held prior to trial and out of the presence of the jury. At the hearing, appellant sought to have all physical evidence, *i.e.,* his tennis shoes, and statements made by appellant to the Maryland State Police, suppressed as a violation of his constitutional rights.

The record indicates that on the evening of April 11, 1980, Sergeant Stinnett of the Maryland State Police, Prince Frederick Post, responded to a complaint of an attempted rape which allegedly occurred on a parking lot of a High's store in Prince Frederick, Maryland. He interviewed the

victim and attempted to get a description of her assailant. During the course of his investigation, Sergeant Stinnett learned that the assailant fled into the woods behind the High's store. After a brief search of the area, he found footprints leading from the parking lot into the woods. On the following morning, at approximately 7:00 a.m., Sergeant Stinnett found similar footprints leading out of the other side of the woods in the vicinity of a house occupied by appellant's father, Charles Jones. Near the house was a gutted bus, which was being used as a residence by the appellant and his girl friend. Sergeant Stinnett approached the bus with appellant's father and explained to appellant that he was investigating an assault which took place the night before.

Appellant stated that he was aware of the incident because of a conversation he had had the previous evening with another State trooper. The Sergeant then told the appellant that he had found footprints in the area and asked if he could look at the appellant's shoes. It is conceded that prior to that point in the conversation, the appellant had asked the Sergeant to wait outside the bus because his "old lady" was asleep inside. While appellant was in the back of the bus gathering his shoes together, Sergeant Stinnett, without permission, stepped upon the platform of the bus, placing himself in a position from which he could observe appellant and see into the interior of the vehicle. Sergeant Stinnett testified that the following then occurred:

Q Did you ever enter the Trailer?

A Yes sir, I was standing at the entrance way.

Q All right, he brought the tennis shoes to you as a result of a conversation that you had with him. You indicated that you were—

A —I asked him if he minded if I checked the shoes and he showed me several pairs of shoes; I asked him if he had a pair of tennis shoes and he stated that he did.

Q Okay, and once you got the tennis shoes, what occurred then?

A  I told him that I would like to take the shoes back and check them with those found at the scene and that I would like him to come with me also. And I would like to ask him some questions and I told him that he wasn't under arrest and he agreed to come, he said he had nothing to hide.

Q  Was anyone else present at that time?

A  His father was there.

Q  Only the three of you there.

A  Yes sir. Well there was a white female asleep in the bus. I assume she was asleep. She never aroused at the time I was there.

Q  How long did you stay in the Trailer?

A  Approximately five minutes.

Q  Did you go through the Trailer?

A  No sir, I just stood at the entrance way.

Appellant remained at the Prince Frederick Post while Sergeant Stinnett took the tennis shoes and compared them with the footprints previously discovered. Upon verification that the shoes fit the footprints, Stinnett returned to the Post and notified the appellant that he was under arrest.

Appellant argues vigorously that his motion to suppress the admissibility of the tennis shoes should have been granted because they were seized in a warrantless search in violation of his fourth amendment rights under the United States Constitution, and that the search and seizure was not permissible as being pursuant to a valid consent given by the appellant.

Appellee contends that there was no search and seizure and urges that we adopt the conclusion of the trial judge that there was, in fact, no illegal taking of the tennis shoes; rather, they were voluntarily surrendered to Sergeant Stinnett without duress or coercion, either express or implied.

It is well established that "searches conducted outside the judicial process, without prior approval by judge or magis-

trate, are *per se* unreasonable under the fourth amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). The burden is on the State to establish that the warrantless search and seizure is within one of these exceptions. *Smith v. State,* 33 Md. App. 407, 365 A.2d 53 (1976). It is clear to us that the action of the police officer in invading the privacy of the appellant's bus without a warrant was a trespassory invasion and if the possession of the tennis shoes had been the result of a search and seizure by the officer while he was so trespassing, it would have been required that the physical evidence and the evidence flowing from it be suppressed. There was, however, in this case testimony from which the trier of fact could reasonably conclude that there was in fact no search, and that the seizure of the tennis shoes was permissive. The trial judge declined to suppress the tennis shoes because there was "no search — made at all."

The record shows that at the suppression hearing the appellant testified as follows:

A   I showed him a pair of my shoes and I went back in the bus to get the shoes and that is when he came in and say, yeah I want to see them shoes right over there, get me them.

Q   You were going to bring him those shoes anyway, weren't you?

A   Yes sir.

Q   And he didn't have a gun at you to make you do that, did he?

A   Now wait a minute, there is a whole lot of difference when you—

Q   —Now just answer my question. Did he have a gun on you?

A   No he didn't.

Q   All right and you were going back and you were going to get the shoes and bring them to him, were you not?

A   Yes sir.

Q   Now you were not under arrest at that time, were you?

A   No sir.

Q   He didn't tell you at any point that you were under arrest until you were down here in Prince Frederick, right?

A   Yes sir.

Under the totality of the circumstances, the State had the burden of showing by a preponderance of the evidence that appellant's surrender of the tennis shoes was voluntary and did not result from duress or coercion, express or implied. *Logue v. State*, 282 Md. 625, 386 A.2d 780 (1978). *See also Dailey v. State*, 234 Md. 325, 199 A.2d 211 (1963), *cert. denied*, 379 U.S. 975, 85 S. Ct. 671, 13 L. Ed. 2d 566 (1965); *Armwood v. State*, 229 Md. 565, 185 A.2d 357 (1962).

While there is no question that the trooper's action in boarding the bus was unauthorized, the record of the suppression hearing reveals a voluntary decision on the part of appellant to cooperate with Sergeant Stinnett. Appellant testified that:

A   . . . I was kinda' celebrating a little. So then he told me, he say, I would like to see your shoes. So I said, sure, you know. I went and got the shoes and brought them out and he said do you have any tennis shoes or sneakers and I said, yeah I have some. So I went in the bus, when I left to turn and go in the bus, I told him why don't you stay out here, because my old lady is in here she is asleep. So I went on in to get the shoes, you know, and when I turned around he was standing in the bus.

Q   Yes.

A   And he say, yeah, let me see those shoes and I went and took the shoes to him and he took them out of my hand and he looked at them and we went outside the bus and he said, Mr. Jones I would like

to take your son down to the station and ask him a few questions, I want to take these shoes.

Q   Yes.

A   So I said, Okay, you know. I went and got dressed and went on down to the station with him.

The trial court found that the appellant voluntarily surrendered the tennis shoes to Sergeant Stinnett and we find nothing in the record from which we could determine that the trial judge was clearly erroneous. We also conclude from our independent review of the entire record that the consent was not the by-product of coercion or duress, direct or implied. *See Mosley v. State,* 289 Md. 571, 425 A.2d 1039 (1981).

2.

Appellant next argues that the trial judge erred in denying his motion to suppress the admission of his oral and written statements which he contends were not freely and voluntarily given. There is no suggestion that appellant did not receive the *Miranda* warnings,[1] nor that he did not understand them. In order for the statements made by appellant to be admissible into evidence, the State must show that it was not the product of force, threats, promises or inducements. *Stokes v. State,* 289 Md. 155, 423 A.2d 552 (1980); *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979). It is the burden of the State to show affirmatively that a confession is voluntarily given and not improperly induced. *Hillard, supra; Abbott v. State,* 231 Md. 462, 190 A.2d 797 (1963).

The factual basis upon which appellant relies in his contention that his oral and written statements were improperly induced and therefore involuntary are found in the testimony of Sergeant Stinnett and the appellant at the suppression hearing.

Appellant contends that during the course of his interrogation he indicated to Sergeant Stinnett that he needed help

---

1. Miranda v. Arizona, 384 U.S. 436 (1966).

and the Sergeant told the appellant that if he needed help "we [the police] would have to get the truth." The record verifies appellant's contention.

Sergeant Stinnett testified as follows:

> Q  Do you recall him twice telling you before you had this confession that you got out of him that he had trouble with his memory?
>
> A  He told me that.
>
> Q  When did he tell you that?
>
> A  Ah, after he was placed under arrest.
>
> Q  After he was placed under arrest?
>
> A  Yes sir.
>
> Q  Before he gave you a confession?
>
> A  Yes sir. Well while he was giving me a confession or statement he was telling me that he couldn't remember everything that happened that night.
>
> Q  And weren't you filling in some details for him? Didn't you tell him what happened?
>
> A  Well I told him — we discussed the incident, I don't remember exactly what I told him or what he told me. He did tell me he couldn't remember everything he did that night.
>
> Q  Didn't you tell him you would get him some help if he told you what happened?
>
> A  He told me that he needed some help.
>
> Q  What did you tell him?
>
> A  l said that is something we will have to see about later. If he needed some help we would have to get the truth.

The accused's testimony verified the Sergeant's statement as to what occurred when he signed the statement:

> Q  Well why did you sign your name to it, if you didn't do it?
>
> A  Because I thought I was going to get some help.

Q    Which Sergeant Stinnett had never promised you.

A    Sergeant Stinnett told me that he would not give me help if I did not cooperate with him.

Judge Digges, speaking for the Court of Appeals in *Hillard v. State, supra,* stated the Maryland law as to the effect of an inducement upon the admissibility of a statement:

> [It] clearly emerges that under Maryland criminal law, independent of any federal constitutional .requirement, if an accused is told, or it is implied, that making an inculpatory statement will be to his advantage, in that he will be given help or some special consideration, and he makes remarks in reliance on that inducement, his declaration will be considered to have been involuntarily made and therefore inadmissible. [286 Md. at 153.]

Judge Lowe, speaking for this Court in *Rowe v. State,* 41 Md. App. 641, 398 A.2d 485 (1979), said:

> The *Biscoe*[2] formula requires in perspective, not only the preliminary determination of whether the underlying meaning of the words used would have clearly constituted to *anyone* a holding out of an inducement, but even then, to further determine whether *the accused* had been influenced by such inducement, if one is found to have been offered. *Ralph v. State,* 226 Md. 480, 486 (1961). See *Merchant v. State,* 217 Md. 61, 69 (1958); *Kier v. State,* 213 Md. 556, 561-563 (1957). The detrimental effect of the "inducement" upon the accused must affirmatively appear in the record in order for the defendant to prevail in suppressing his statement. See *Ralph v. State,* 226 Md. at 487-488. [41 Md. App. at 645-46.]

Our examination of the record in this case convinces us that Sergeant Stinnett did in fact offer the accused an

---

**2.** Biscoe v. State, 67 Md. 6 (1887).

improper inducement when he told the appellant that if he wanted "some help we would have to get the truth" and that the appellant gave and signed the inculpatory statement in reliance on that inducement. We conclude therefore that the judgments in this case must be reversed.

3.

We find no merit in appellant's contention that the evidence was insufficient to sustain appellant's conviction. Appellant was positively identified in court as the perpetrator of these crimes. That testimony, if believed, was sufficient to sustain appellant's conviction. *Jackson v. State,* 46 Md. App. 325, 416 A.2d 1353 (1980).

> *Judgments reversed, case remanded for new trial, costs not to be reallocated pursuant to Md. Rule 1082 f.*