744 A.2d 588

**Donna L. SAMPSON**

**v.**

**STATE of Maryland.**

**No. 1892, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 19, 2000.

Stephen Z. Meehan (David C. Wright, Joseph B. Tetrault and Wright & Meehan, on the brief), Chestertown, for appellant.

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore and Michael C. Maloney, State's Attorney for Dorchester County, Cambridge, on the brief), for appellee.

Argued before MURPHY, C.J., and HOLLANDER and SALMON, JJ.

MURPHY, Chief Judge.

In *Zimmerman v. State,* 78 Md.App. 1, 552 A.2d 47 (1989), after explaining why the "fruit of the poisonous tree" doctrine required that this Court reverse the conviction of a defendant whose culpability had been established "beyond question," Chief Judge Gilbert reiterated

> what Judge Moylan wrote in *The Right of People to Be Secure,* National College of District Attorneys (1976):
>
> > Frequently, a police officer, in a reflective mood, will say, "Judge, you know this 4th Amendment makes my job a lot tougher and more difficult." What does one respond, except to say:
> >
> > "Officer, that's precisely what a Bill of Rights is for. Even in our service, you are not permitted the efficiency permitted a counterpart in a Gestapo or an NKVD. From day to day, that is your burden; but from decade to decade and century to century, that is your glory. When you look at your wife and children at home at night, you yourself would not have it otherwise. Yes, Officer, it makes your job a lot more difficult. It's supposed to."

*Id.* at 8, 552 A.2d 47. Judge Moylan's response applies with equal force to this appeal from the Circuit Court for Dorchester County, in which Donna L. Sampson, appellant, argues

that her Fourth Amendment rights were violated when law enforcement officers—acting without a warrant—conducted a series of "trash runs" during which they removed from her front lawn trash bags that she had placed there for pick-up by trash collectors. As a result of evidence derived from the trash runs at issue, appellant was convicted of possession of a controlled dangerous substance and of maintaining a common nuisance. She now presents the following questions for our review:

I. Should appellant's motion to suppress have been granted by the Circuit Court when the search warrant was derived from evidence obtained when police trespassed onto appellant's property to search through trash bags that were a few feet from the sidewalk?

II. Was the evidence sufficient to convict on the charge of simple possession?

III. Was the evidence sufficient to convict on the charge of maintaining a common nuisance?

For the reasons that follow, we shall answer "yes" to question I and reverse the judgments of conviction.[1]

## I.

The evidence used to convict appellant was obtained during the execution of a search warrant that contained the following information. The Cambridge Police Department received information that appellant made a cash payment of $3,000 for repairs to her automobile. An officer went to the house that appellant was renting and, without a warrant, grabbed trash bags that appellant had placed out for collection. The bags were on appellant's front lawn, but close enough to the public street that the officer could reach them without walking onto appellant's property. When the bags were inspected, police found (1) several baggies with the bottom corners cut out and

---

1. Because we hold that the evidence should have been suppressed, we need not reach the second and third issues.

with cocaine residue on them, (2) letters addressed to appellant, and (3) a draft of her resume.

After conducting additional "trash runs" in a similar manner, the officers included the results of their investigation in an application for a warrant to search appellant's residence. The warrant was issued on November 12, 1997, and executed on November 22, 1997. Appellant and her boyfriend were in the master bedroom when the police entered. The search turned up (1) "a black film canister with crack cocaine and a baggie with seven packets of powdered cocaine" on top of a dresser in the master bedroom, and (2) $3,700 in cash, most of which was found in a man's boot underneath the bed.

## II.

Appellant contends that the "trash runs" conducted by the officers were unreasonable searches and seizures under the Fourth Amendment of the United States Constitution. In *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the Supreme Court held that the respondents did not exhibit a reasonable expectation of privacy in the trash bags that they had left at curbside for pickup, noting that "plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops and other members of the public." *Id.* at 40, 108 S.Ct. 1625. Thus, because defendants

> deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it" ... respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*Id.* at 41, 108 S.Ct. 1625. (internal citations omitted).

We agree with Professor LaFave that "*Greenwood* should not be read as an endorsement of the broad and unsound concept that one's garbage is abandoned property and thus is always without Fourth Amendment protection." 1 W. LaFave, Search and Seizure § 2.6(c), at 595 (3d ed.1996). More-

over, in *Greenwood*, (1) the garbage bags were placed outside the curtilage, and (2) the police retrieved the trash bags from the garbage collector rather than grab the bags themselves. 486 U.S. at 35, 108 S.Ct. 1625. "Because *Greenwood* is limited to 'trash left for collection in an area accessible to the public,' it should not be construed as permitting police to enter the curtilage and seize garbage kept there." W. LaFave, J. Israel, N. King, *Criminal Procedure*, § 3.2(h) (2d ed.1999).

■ The Fourth Amendment protection of a person's home from unreasonable searches and seizures extends to the curtilage, i.e. to "those areas near the residence which harbor the intimate activity associated with the 'sanctity of a [person's] home and the privacies of life.'" *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (citing *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984), and *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)).

■ Appellant's trash bags were seized without a warrant from the front yard of her home. The bags were leaning against a tree in the yard where her children played. While there was no fence or other physical barrier that separated the property from the public street,[2] "a yard or lawn is considered within the protection of the curtilage and the mere absence of a physical barrier such as a fence, gate or hedge is not conclusive." *Everhart v. State*, 274 Md. 459, 485, 337 A.2d 100 (1975). The *Everhart* Court cited with approval the case of *People v. Edwards*, 71 Cal.2d 1096, 458 P.2d 713, 80 Cal.Rptr. 633 (1969), in which the Supreme Court of California ordered the suppression of evidence derived from the inspection of a trash can that "required trespass for its inspection."

---

**2.** The *Dunn* Court outlined four factors useful, but not mandatory, in resolving curtilage issues:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.

*Dunn, supra.*

*Id.* at 1104, 458 P.2d at 718, 80 Cal.Rptr. at 638. The *Edwards* Court relied on the fact that (1) the property was within the curtilage, and (2) was removed from the property by the police during a trespass rather than by the garbage collectors during a regular pick-up.[3] *Id.*

## III.

It is true that in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court held that the trespass doctrine was no longer controlling because the Fourth Amendment was designed to protect people, not places. 389 U.S. at 351, 88 S.Ct. 507. This Court has observed, however, that

> while the "trespass" doctrine may no longer be controlling so as to permit the admission of evidence on the ground that when it was obtained there was no physical intrusion into a constitutionally protected area, we do not construe *Katz* as overruling the rule that evidence is *inadmissible* because obtained by a physical trespass or actual intrusion into a constitutionally protected area.

*Brown v. State*, 3 Md.App. 90, 95 n. 3, 238 A.2d 147 (1967). The "constitutionally protected area" in *Brown* was an enclosed stall in a public toilet where the arresting officer observed appellant's violation of the Maryland Controlled Dangerous Substances Act. Because the arresting officer's observations were the result of his trespass, the search was

---

**3.** The Supreme Court of California later relied on *Edwards* in *People v. Krivda*, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971), vacated and remanded, 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), affirmed on same grounds, 8 Cal.3d 623, 105 Cal.Rptr. 521, 504 P.2d 457, cert. denied, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973). In *Krivda*, police saw trash barrels in front of a home adjacent to a sidewalk, approached the garbage collectors and required them to hand over the refuse. The Supreme Court of California held that "under such circumstances … defendants had a reasonable expectation of privacy that their trash would not be rummaged through and picked over by police officers acting without a search warrant." 5 Cal.3d 357, 366–67, 96 Cal.Rptr. 62, 68, 486 P.2d 1262, 1268 (1971).

held to be unreasonable. *Id.* at 94–95, 238 A.2d 147. In *Jones v. State,* 48 Md.App. 726, 429 A.2d 308 (1981), we noted that the action of the police officer in invading the privacy of the appellant's bus without a warrant was a trespassory invasion and if the possession of the ... [incriminating evidence] had been the result of a search and seizure by the officer while he was so trespassing, it would have been required that the physical evidence and the evidence flowing from it be suppressed.

*Id.* at 730, 429 A.2d 308.

■■■ It is also true that a "person may relinquish any Fourth Amendment property rights or expectation of privacy he or she may have in a place or object by 'abandoning' that place or object." *Brown v. State,* 75 Md.App. 22, 36, 540 A.2d 143 (1988) (citing *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)).

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts ... All relevant circumstances existing at the time of the alleged abandonment should be considered ... police pursuit or the existence of a police investigation does not of itself render abandonment involuntary ... The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*Duncan and Smith v. State,* 281 Md. 247, 265, 378 A.2d 1108 (1977), quoting *United States v. Colbert,* 474 F.2d 174, 176 (5 th Cir.1973).

The police removed appellant's trash bags on "trash day." Appellant concedes that she had put the bags out for trash pick-up, but argues that her consent to a pick-up by the trash collectors did not constitute a consent to a search by the police. We must determine whether, under these circumstances, appellant

personally [had] an expectation of privacy in the place searched, and that [her] expectation is reasonable; i.e., one which has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

*Rakas v. Illinois*, 439 U.S. 128, 143–44, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

In *State v. Hempele*, 120 N.J. 182, 576 A.2d 793 (1990), the Supreme Court of New Jersey expressly recognized the significant

difference between a homeless person scavenging for food and clothes, and an officer of the State scrutinizing the contents of a garbage bag for incriminating materials.

*Id.* at 805. We agree with that distinction. The police were not entitled to search appellant's trash bags simply because appellant had consented to a pick-up by the trash collectors.

## IV.

While the Fourth Amendment makes it more difficult for officers to inspect trash bags that are within the curtilage of the suspect's residence, the Fourth Amendment does not make such inspections impossible. In this case, the police could have waited for appellant's trash to be picked up, and then taken it from the collectors. See, e.g., *State v. Hauser*, 342 N.C. 382, 464 S.E.2d 443 (1995), in which the North Carolina Supreme Court held that "a warrantless search of garbage by police, after pickup by the regular collector in the normal manner, does not violate the Fourth Amendment." *Id.* at 447. Although a resident who places a trash bag out for collection has no Fourth Amendment protection against the trash collector picking up the bag and turning it over to the police, the Fourth Amendment does prohibit a law enforcement officer from making a warrantless seizure of a trash bag located within the curtilage of the residence. We therefore hold that the warrantless "trash runs" at issue in this case

violated appellant's Fourth Amendment protection against unreasonable governmental intrusion.

**JUDGMENT REVERSED; COSTS TO BE PAID BY DORCHESTER COUNTY.**