[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-17256
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-20726-CR-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK SMALLS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 18, 2009)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Frederick Smalls appeals his convictions for possession of a firearm and

ammunition by a convicted felon, 18 U.S.C. § 922(g)(1), and possession of cocaine, 21 U.S.C. § 844(a). Smalls challenges three evidentiary rulings of the district court that denied Smalls's motions to suppress drug evidence and his statement to officers and his motion in limine to exclude evidence about an anonymous tip. Small also challenges the decision of the district court to give an Allen charge. We affirm.

## I. BACKGROUND

Detective Alan Lowy of the Miami-Dade Police received an anonymous tip that Smalls had two nine millimeter pistols at his residence where he sold narcotics. The tipster stated that Smalls "had a violent past" and "would hurt anybody that comes in" his residence. The tipster identified Smalls by name, described him as a black male around 30, and stated that Smalls drove a silver Impala with tinted windows. The tipster stated that Smalls lived in Apartment 7 at 2287 Northwest 87th Street.

Lowy drove to the area described by the tipster and, although there was no apartment building at either 2287 or 2289 Northwest 87th Street, the detective noticed an apartment building located at 2239 Northwest 87th Street that had an Apartment 7 and, in its parking lot, a silver Impala with tinted windows. The detective later traced the tag number of the Impala and discovered it was registered

2

to Frederick Smalls who lived at 2239 Northwest 87th Street. The detective checked Smalls's criminal history and learned that Smalls had been convicted of armed burglary, narcotics violations, resisting arrest, and assault. Lowy also drove by Smalls's apartment on three or four occasions at different times of day to determine when Smalls was at home.

A month after the anonymous tip, Detectives Lowy and Alex Andrade and three other officers drove to Smalls's apartment. As Lowy and Andrade passed near the window of Smalls's apartment, the officers could smell marijuana burning and exchanged a "kind of a look." Lowy knocked on Smalls's front door and said, "Miami-Dade Police, this is the police." Lowy heard a "light shuffling sound," knocked on the door a second time, and identified himself. A man that matched the description given by the tipster opened the door and identified himself as Smalls. Through the open door, Lowy and Andrade saw on the couch "cut up, leafy" marijuana and a digital scale and nearby on a coffee table "a few burnt marijuana cigarettes." Andrade told Smalls that "the jig is up. We smell the weed, we see it right there, so let's go inside, talk about this[,]" and the detectives walked into the apartment. After Smalls complied with Andrade's instruction to sit on the floor, Smalls told the officers that he was alone and unarmed.

Andrade noticed the butt of a pistol protruding from the cushions of the couch, and Smalls reacted by "moving around and [he] began to get up[.]"  In fear that Smalls might be armed, Andrade forced Smalls back on the ground, where Smalls struck his head, and Andrade handcuffed Smalls.  After Andrade told Lowy about the gun, Lowy seized the gun and discovered eight live rounds of ammunition in the chamber and magazine.  Andrade said to Smalls, "you fuck.  I thought you said there were no guns in the house[,]" and Smalls replied, "you guys know how it is, a lot of people getting killed out there, brother got to protect himself, . . . you work around here."  The officers seized from Smalls's apartment about 50 grams of marijuana, .5 grams of powder cocaine, small plastic bags of marijuana, and $435.

Smalls was charged in a four-count indictment as a felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1), and for possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), (b)(1)(D), possession of cocaine, id. § 844(a), and possession of a firearm in furtherance of trafficking drugs, 18 U.S.C. § 924(c)(1)(A).  Before trial, Smalls moved to suppress the incriminating statements he made to Andrade on the ground that the statement was elicited in violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).  Smalls also moved to suppress the evidence seized from his apartment on the ground it was obtained

4

during an illegal, warrantless search.

A magistrate judge held a hearing on Smalls's motions. Detective Lowy testified about his investigation and the search of Smalls's apartment. The detective verified that he did not kick open the door or order Smalls to open the door. Detective Andrade testified that he became "excited" when he saw the pistol; he made a spontaneous comment to Smalls about the weapon that he did not expect would elicit a response; and he did not attempt to question Smalls further about the weapon. Detective Andrade explained that, after he noticed Smalls had a cut over his eye, he called the paramedics to treat Smalls.

Smalls provided a different version of events. Smalls testified that he awoke to the sound of officers beating on his door and, as he opened the door, the police forced their way into his apartment with their guns drawn, questioning him about guns. Smalls asserted that Andrade forced him to the ground and stomped on his head, cutting his eye. On cross-examination, Smalls denied ownership of the gun found in the couch; denied that he had told Andrade that he had the gun for self-protection; and stated he "had no idea" that marijuana was "inside [his] house."

The magistrate judge recommended that the district court deny Smalls's motions to suppress. The magistrate judge credited the testimonies of the detectives and ruled that they acquired probable cause to enter Smalls's apartment

5

and arrest him based on evidence of drug trafficking and contraband in plain view inside the apartment and the possibility that evidence could be destroyed. The magistrate judge found that Andrade's remark to Smalls "was a spontaneous exclamation of surprise[,] . . . not said in a questioning tone of voice"; was not intended "to elicit an incriminating response"; and Smalls's response "was not . . . directly responsive to the exclamation" and was "volunteered[.]" The judge ruled that Andrade was not required to give Smalls a Miranda warning and the statement was admissible. The district court adopted the recommendation of the magistrate judge.

Smalls moved in limine for the district court to limit testimony about the anonymous tip to a statement that Lowy went to Smalls's apartment "pursuant to an anonymous tip." The government explained that Lowy would testify that he received an anonymous tip that Frederick Smalls was "dealing drugs . . . out of this particular apartment" and he "ha[d] a couple of firearms" and was "very dangerous." The district court ruled admissible the proffered testimony, with the exception of the statement that Smalls was dangerous. Smalls requested the district court provide a limiting instruction when Lowy testified about the tip. The district court agreed and asked Smalls for a reminder about the instruction.

At trial, the government did not mention the anonymous tip in its opening

6

remarks. Lowy affirmed on direct examination that he "[led] an investigation into possible narcotics and firearm violations involving" Smalls. Smalls asked Lowy on cross-examination if he went to Smalls's apartment "pursuant to a tip" and if "[i]t was an anonymous tip[.]" Smalls also asked Andrade on cross-examination whether the officers went to Smalls's home based on "a tip . . . that Mr. Smalls was selling drugs out of the apartment[,]" to which Andrade replied, "I don't have the details on the tip." Smalls did not request a limiting instruction. The government argued in closing that the detectives "did their job when they followed up on a tip" that led them to investigate Smalls.

After the jury deliberated about six hours over the course of two days and sent two notes to the district court, the jury sent a third note stating it could not reach a verdict. The district court replied and asked the jury to "[p]lease continue [its] deliberations in an effort to reach agreement." The next day, the jury asked to review certain evidence and a fourth note stating it could not agree on a verdict. Over Smalls's objection, the district court instructed the jury to continue its deliberations and read verbatim the modified Allen charge included in the Pattern Jury Instructions. After the jury further deliberated and sent a fifth note to the district court, the jury found Smalls guilty of being a felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1), and possessing cocaine, 21 U.S.C.

7

§ 844(a), and acquitted Smalls of possession with the intent to distribute marijuana, id. § 841(a)(1), (b)(1)(D), and possession of a firearm in furtherance of a trafficking offense, 18 U.S.C. § 924(c)(1)(A).

## II. STANDARDS OF REVIEW

We apply four standards of review in this appeal. On denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts de novo. United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007). We construe all facts in the light most favorable to the government. Id. at 1235–36. Objections not preserved in the district court are reviewed for plain error. United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir. 2007). We will not consider error invited by the complaining party. United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006). We review for abuse of discretion the decision to give an Allen charge to determine the "coercive impact of the charge." United States v. Demarest, 570 F.3d 1232, 1243 (11th Cir. 2009) (quoting United States v. Trujillo, 146 F.3d 838, 845 (11th Cir. 1998)).

## III. DISCUSSION

Smalls raises four separate issues for our consideration. All fail. We address each argument in turn.

8

*A. The Drug Evidence Seized from Smalls's Apartment Was Admissible.*

Smalls argues that the drug evidence seized from his home should have been suppressed because the government lacked probable cause and no exigent circumstances existed to enter his home and place him under arrest, but we disagree. Detectives Lowy and Andrade noticed the smell of burning marijuana wafting from a window of Smalls's apartment and, after Smalls opened his front door, the detectives saw lying on a couch in plain view marijuana and a digital scale. These observations corroborated the anonymous tip that Smalls had been trafficking in drugs and provided probable cause to arrest Smalls. See Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997). Because the anonymous tip warned of guns and had proved otherwise reliable, the officers had reason to suspect that Smalls was in possession of a firearm, which created an exigent circumstance to arrest Smalls without a warrant. See United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir. 1987). The district court did not err by denying Smalls's motion to suppress.

*B. Smalls's Statement to Detective Andrade Was Admissible.*

Smalls challenges the findings of fact that Detective Andrade's tone of voice suggested his statement was intended as a question and that Smalls's response was not responsive to the statement. Smalls argues that the statement by the detective

was "the functional equivalent of [an] interrogation" that triggered Smalls's "right to [a] Miranda warning[]" and that Andrade's statement begged a response. These arguments fail.

Although Smalls was in the custody of the police, his response was not "the product of [an] interrogation." Rhode Island v. Innis, 46 U.S. 291, 299, 100 S. Ct. 1682, 1689 (1980). The record supports the findings that Detective Andrade was startled when he saw a gun nearby and reacted by making a spontaneous statement to Smalls that was not intended to prompt a response from Smalls. Based on the situation, Andrade would not expect Smalls, having denied there was a gun in the apartment, to give an incriminating response. See id. at 301, 100 S. Ct. at 1690. Andrade's statement that Smalls had lied did not compel Smalls to explain why he had a gun. Smalls's unresponsive statement "was totally voluntary and clearly outside the protective umbrella of Miranda." United States v. Castro, 723 F.2d 1527, 1530 (11th Cir. 1984). The district court did not err when it denied Smalls's motion to suppress.

*C. Smalls Invited Any Error Involving Testimony About the Anonymous Tip.*

Smalls argues that the admission of testimony about the anonymous tip violated his Sixth Amendment right to confront the tipster, but this argument fails. Smalls moved in limine to exclude as hearsay testimony about the anonymous tip,

10

but Smalls failed to object when the subject was broached at trial. See United States v. Khoury, 901 F.2d 948, 966 (11th Cir. 1990) ("A defendant must object at trial to preserve an objection on appeal; the overruling of a motion in limine does not suffice."). Although the adverse ruling allowed the government to inquire into the substance of the tip, the government asked Detective Lowy only whether he had "[led] an investigation into possible narcotics and firearm violations involving" Smalls. Smalls later cross-examined Detectives Lowy and Andrade about the anonymous tip in an effort to undermine the credibility of Lowy's investigation. United States v. Baker, 432 F.3d 1189, 1215–16 (11th Cir. 2005). "[E]ven plain error review is unavailable in cases where a criminal defendant 'invites' the constitutional error of which he complains." United States v. Jernigan, 341 F.3d 1273, 1289 (11th Cir. 2003).

*D. The Allen Charge Was Not Coercive.*

Smalls argues that the dynamite charge was coercive because it referenced the money and time spent by the government on the case, but we disagree. Although the district court read verbatim those portions of the charge that we criticized in United States v. Rey, 811 F.2d 1453, 1459–60 (11th Cir. 1987), we have approved the use of the pattern jury instruction on several occasions, see United States v. Dickerson, 248 F.3d 1036, 1050–51 (11th Cir. 2001), and nothing

11

in the circumstances surrounding that reading is remotely coercive. The district gave the Allen charge after the jury announced for the second time that it was deadlocked, and the court did not poll the jury before reading the charge. The jury deliberated two hours after the charge and in that time sent a note to the district court regarding the evidence. When the jury returned its verdicts, it acquitted Smalls of two charges, which establishes the jurors heeded the court's admonition that they were not expected to give up their honest beliefs about the weight or effect of the evidence. The district court did not abuse its discretion by reading the Allen charge.

## IV. CONCLUSION

We **AFFIRM** Smalls's convictions.

12