[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10253
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20590-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN BAPTISTE JOSEPH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 30, 2017)

Before MARCUS, JILL PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

Jean Baptiste Joseph appeals his convictions for being a felon in possession of a firearm, possession with intent to distribute ethylone and marijuana, and for possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(ii), and 21 U.S.C. § 841(a)(1). Joseph also challenges the reasonableness of his 660-month total sentence.[1] No reversible error has been shown; we affirm.

## I.

Joseph challenges the district court's denial of his motion to suppress evidence seized during two searches of Joseph's bedroom. Joseph contends that no exigent circumstances existed to justify the warrantless entry into -- and the initial search of -- his bedroom. Joseph also argues that he did not consent voluntarily to the second search of his bedroom.

In considering the district court's denial of a motion to suppress, we review fact determinations for clear error and application of law to the facts de novo.

---

[1] We will not consider on appeal Joseph's argument -- raised for the first time in his reply brief -- that his sentence constitutes a violation of the Eighth Amendment. See United States v. Magluta, 418 F.3d 1166, 1185-86 (11th Cir. 2005).

United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007).  We construe all facts in the light most favorable to the prevailing party.  See id.

Under the Fourth Amendment, the police are prohibited "from making a warrantless and non-consensual entry into a suspect's home for purposes of making a felony arrest, unless exigent circumstances are present."  United States v. Standridge, 810 F.2d 1034, 1036 (11th Cir. 1987) (citing Payton v. New York, 100 S. Ct. 1371 (1980)).  We have identified, at least, five factors as being indicative of exigent circumstances justifying a warrantless entry:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; [and] (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public.

Id. at 1037.

Circumstances in this case -- viewed in the light most favorable to the government -- were sufficiently exigent to justify the officers' warrantless entry into Joseph's bedroom for purposes of his arrest.[2]  Based on statements made by

---

[2] We reject Joseph's assertion that the officers created their own exigency by arriving at the house and knocking on the front door.  The record does not support the finding that the officers gained entry "by means of an actual or threatened violation of the Fourth Amendment."  For background, see Kentucky v. King, 131 S. Ct. 1849 (2011).  Moreover, that the officers had probable cause to arrest Joseph weeks earlier -- and, thus, that the officers could have obtained an arrest warrant -- does not render unconstitutional the officers' knocking on the front door.  See id. at 1861 ("Faulting the police for failing to apply for a search warrant at the earliest

Joseph's co-defendant and an eyewitness, the officers had probable cause to believe that Joseph had committed two violent offenses: armed robbery and murder. The officers also believed reasonably that Joseph was armed, given that the gun used to commit those earlier crimes had not yet been recovered.

In addition, the officers knew that Joseph was inside the house. First, a person whom the officers saw leaving the house told the officers that Joseph was inside. When the officers knocked on the front door, the person who answered identified himself as the homeowner, confirmed that Joseph was inside, and gave the officers permission to enter the home. While speaking with the homeowner, the officers saw Joseph through the open front door. After Joseph made eye contact with the officers, he moved quickly into a bedroom. At that point, the officers entered the home, entered Joseph's rented bedroom, and placed Joseph under arrest.

The officers believed reasonably that Joseph was armed and had been involved recently in violent crimes, and Joseph knew the officers were at the house; so a delay in arresting Joseph would have increased the risk to the officers and to the public, had Joseph attempted to avoid arrest by force. See Standridge, 810 F.2d at 1037 (concluding exigent circumstances existed to justify a warrantless

possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution.").

4

arrest in part because it was safer to arrest the suspect immediately and by surprise instead of waiting for a warrant and "risk a gun battle erupting" in a public area).

Because the officers entered lawfully Joseph's bedroom to arrest him, the officers were entitled to perform a protective sweep of the room incident to arrest. See id. ("A search incident to arrest is always allowed of the suspect's person and the immediate area from which the suspect can grab a weapon or destroy evidence."). Nothing evidences -- and Joseph does not contend -- that the officers exceeded the scope of a lawful protective sweep. Thus, the evidence -- including an AK-47, ammunition, and drugs -- discovered in plain view during the protective sweep was lawfully seized.

The second search of Joseph's bedroom occurred after Joseph signed a written consent authorizing a full search without a warrant. Joseph contends, however, that his consent was not voluntarily obtained.

Because the district court relied only on the uncontradicted testimony of the government's witnesses in assessing the voluntariness of Joseph's consent, we review de novo the district court's determination about voluntariness. See United States v. Tovar-Rico, 61 F.3d 1529, 1535 (11th Cir. 1995); United States v. Garcia, 890 F.2d 355, 359-60 (11th Cir. 1989). Whether Joseph's consent to search was "'voluntary' or was the product of duress or coercion" must be judged in the light of the totality of the circumstances. Schneckloth v. Bustamonte, 93 S. Ct. 2041,

5

2047-48 (1973).  In determining the voluntariness of consent, we consider these kinds of factors, none of which are dispositive: (1) the "voluntariness of the defendant's custodial status," (2) "the presence of coercive police procedure," (3) "the extent and level of the defendant's cooperation with police," (4) "the defendant's awareness of his right to refuse to consent to the search," (5) "the defendant's education and intelligence," and (6) "the defendant's belief that no incriminating evidence will be found."  United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984).  The government bears the burden of showing the consent was freely and voluntarily given.  United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989).

We have considered the totality of the circumstances.  We conclude that Joseph's consent to search his bedroom was voluntary.  First, nothing evidences that coercive procedures were used to obtain Joseph's consent or that the officers threatened Joseph -- expressly or impliedly -- before he signed the consent.  Joseph gave his consent to search one to two hours after he had been arrested and after he had been brought to the police station.  Joseph, thus, had enough time to recover from the initial shock of the police encounter and to consider his situation.

Moreover, Joseph read and signed a written form that notified him expressly of his right to refuse to consent to a search and of his right to demand that a search warrant be obtained.  That Joseph refused to give a statement to police, after

6

Joseph's reading a form advising him of his Miranda rights shows that Joseph was able to read and to understand the forms and was able to exercise his right to say "no" in the face of police authority.

The record supports the district court's determination that Joseph's consent was freely and voluntarily given. Thus, the seizure of items during the second search of Joseph's bedroom violated no Fourth Amendment rights. The district court denied properly Joseph's motion to suppress.

## II.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. See Gall v. United States, 128 S. Ct. 586, 591 (2007). The party challenging the reasonableness of the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the 18 U.S.C. § 3553(a) factors.[3] United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). We will reverse a sentence when "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of

---

[3] Under section 3553(a), a district court should consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to provide adequate deterrence, respect for the law, and protection of the public, policy statements of the Sentencing Commission, provision for the medical and education needs of the defendant, and the need to avoid unwarranted sentencing disparities. 8 U.S.C. § 3553(a)(1)-(7).

reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008).

In reviewing a sentence, we first examine whether the district court committed a significant procedural error, such as calculating improperly the guidelines range, failing to consider the section 3553(a) sentencing factors, basing the sentence on clearly erroneous facts, or failing to explain adequately the chosen sentence. Gall, 128 S. Ct. at 597. After we have determined that a sentence is procedurally sound, we review the sentence's substantive reasonableness under the totality of the circumstances. Id. A sentence substantively is unreasonable if it "fails to achieve the purposes of sentencing as stated in section 3553(a)." Talley, 431 F.3d at 788. "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007).

Joseph contends that his sentence is procedurally unreasonable for three reasons: (1) the district court applied improperly the career offender residual clause under U.S.S.G. § 4B1.2(a)(2); (2) Joseph's conviction for battery on a law-enforcement officer qualifies as no crime of violence under section 4B1.2(a)(2); (3) the district court should have applied the not-yet-implemented guideline

8

amendment (Amendment 798), which eliminated the residual clause from section

4B1.2(a)(2).[4]

First, we reject (as foreclosed by binding precedent) Joseph's argument that

the residual clause of the career-offender guideline is unconstitutionally vague in

the light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct.

2551 (2015).  See Beckles v. United States, 137 S. Ct. 886, 892 (2017); United

States v. Matchett, 802 F.3d 1185, 1194 (11th Cir. 2015).  We also reject Joseph's

argument that his Florida conviction for battery on a law-enforcement officer

constitutes no crime of violence for purposes of the residual clause of the career

offender guideline.  See Rozier v. United States, 701 F.3d 681, 682 (11th Cir.

2012) (explaining that Florida battery of a law-enforcement officer qualifies as a

crime of violence under the residual clause of section 4B1.2(a)(2)); see also Turner

v. Warden Coleman FCI, 709 F.3d 1328, 1340 (11th Cir. 2013) (citing Rozier and

determining that Florida battery on a law-enforcement officer qualifies as a violent

felony under the residual clause of the Armed Career Criminal Act).

In reviewing a district court's application of the sentencing guidelines, we

apply the version of the guidelines in effect on the date of sentencing.  United

---

[4] Joseph contends on appeal that the district court should have applied Amendment 798 to his sentence based, in part, on the rule of lenity.  Because Joseph failed to raise that argument to the district court, we review that issue only for plain error.  See United States v. Evans, 478 F.3d 1332, 1338 (11th Cir. 2007).  As Joseph concedes, however, this circuit has not yet decided whether the rule of lenity applies to the sentencing guidelines post-Booker.  See United States v. Wright, 607 F.3d 708, 716 (11th Cir. 2010) (William Pryor, Fay, J.J., concurring).  Thus, Joseph can demonstrate no error that was plain.

9

States v. Descent, 292 F.3d 703, 707 (11th Cir. 2002).  Because the residual clause was part of the sentencing guidelines in effect when Joseph was sentenced, the district court committed no error in applying the residual clause in calculating Joseph's advisory guideline range.  See id.  Furthermore, because Amendment 798 constituted a substantive change to the career offender guideline, it does not apply retroactively to Joseph's sentence.  See United States v. Jerchower, 631 F.3d 1181, 1184 (11th Cir. 2011) (substantive guideline amendments are not applied retroactively on direct appeal); U.S.S.G. Supp. to App. C, amend. 798 (Aug. 1, 2016).

Joseph has also not shown that his 660-month total sentence was substantively unreasonable.  In determining Joseph's sentence, the district court considered expressly the parties' arguments and addressed several of the section 3553(a) factors.  In particular, the district court concluded that a total sentence of 660 months was appropriate given Joseph's extensive criminal record and his complete lack of remorse and unwillingness to accept responsibility.  Also, in the light of the severity of Joseph's instant offenses -- being a felon in possession of an AK-47 and 200 rounds of ammunition in furtherance of a drug trafficking crime -- a lengthy sentence was necessary to promote respect for the law, to provide adequate deterrence, and to protect the public from future crimes committed by

Joseph.  Joseph's sentence is also within the applicable guideline range; we ordinarily expect such a sentence to be reasonable.  See Talley, 431 F.3d at 788.

Given this record, we cannot say that Joseph's 660-month sentence failed to reflect the purposes of sentencing or that the district court committed "a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  See Pugh, 515 F.3d at 1203.

AFFIRMED.